NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

UNITY CONSTRUCTION SERVICES, INC.,

               Petitioner,

v.

NEW JERSEY BUILDING LABORERS'
LOCAL UNIONS AND DISTRICT
COUNCILS, et al.,

               Respondents.

Civ. No. 11-6209

OPINION

THOMPSON, U.S.D.J.

       This matter has come before the Court on Petitioner Unity Construction Services, Inc.'s

("Unity" or "the company") Motion to Vacate Arbitration Award [Docket # 4] and Respondents'

New Jersey Building Laborers' Local Unions and District Councils and Laborers' Local Unions

("Laborers") Affiliated with the Laborers' International Union of North America ("LIUNA")

(collectively, "Respondents") Cross-Motion to Confirm Arbitration Award [10].  The Court has

decided these motions after considering all of the parties' submissions and without oral

arguments pursuant to Fed R. Civ. P. 78(b).  For the reasons that follow Petitioner's motion will

be granted and Respondent's cross-motion will be denied.

**I.**      **BACKGROUND**

       This dispute arises out of an arbitration proceeding that addressed whether Unity had

violated a collective bargaining agreement ("CBA") between itself and the Respondents by

failing to utilize union employees on certain job sights.  The arbitrator found that Unity had

violated the CBA.  The parties now dispute whether this final arbitration award should be

confirmed or vacated by this Court.

Unity argues that the arbitrator exceeded the scope of his authority by first ruling that the dispute was in fact subject to arbitration.  It claims that the CBA was not valid because the company C.F.O., Patricia D'Alessio, had no authority to bind Unity and thus no contract actually existed between the parties.  Alternatively, Unity argues that the agreement signed by D'Alessio is "internally inconsistent" in that there are two separate arbitration procedures identified, and therefore a court must decide what procedure to apply.  Respondents argue that Unity's claim goes to the validity of the contract as a whole and not the specific arbitration provision, nor its actual existence.  Respondents further argue that even if the arbitrator exceeded his authority, the Court should undertake its own factual analysis of whether Unity was bound to arbitrate this dispute and enforce the award so as not to waste judicial resources.

## II.    LEGAL STANDARD

Generally speaking, arbitration awards are permitted very deferential treatment by the courts.  "Judicial review of a labor-arbitration decision pursuant to [a labor] agreement is very limited." *Major League Baseball Players Assoc. v. Garvey*, 532 U.S. 504, 509 (2001). Disagreement by a court as to the actual outcome of the arbitration is not sufficient to vacate the award, even if the court "is convinced [the arbitrator] committed a serious error." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 39 (1987).  It is only when "there is a disregard of the contract 'totally unsupported by principles of contract construction'" that an arbitration award should not stand on its merits. *Roberts & Schaefter Co. v. United Mine Workers Local 1846*, 812 F.2d 883, 885 (3d Cir. 1987) (quoting *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir. 1969)).

Beyond being unenforceable due to a manifest disregard for the law, an arbitration award may be vacated by a district court "where the arbitrators exceeded their powers."  9 U.S.C. § 10(a)(4).  For example, an arbitrator cannot determine its own jurisdiction, "for the question

2

whether a dispute is to be arbitrated belongs to the courts unless the parties agree otherwise."
*Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 111 (3d Cir. 2000) (citing *First Options of
Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *AT&T Techs., Inc. v. Commc'ns Workers*,
475 U.S. 643, 651 (1986)).  The term "question of arbitrability," however, has a "limited scope."
*Certain Underwriters at Lloyd's London v. Westchester Fire Ins. Co.*, 489 F.3d 580, 585 (3d Cir.
2007).  "Rather than being raised whenever a party contends that it is not required to arbitrate, a
question of arbitrability is raised only where disputes concern 'whether the parties are bound by
a given arbitration clause' or 'whether an arbitration clause in a concededly binding contract
applies to a particular type of controversy.'"  *N.J. Bldg. Laborers Statewide Benefits Fund v. Am.
Coring & Supply*, 341 F. App'x 816, 820 (3d Cir. 2009) (quoting *Westchester Fire Ins. Co.*, 489
F.3d at 585).

In contrast to a challenge to the specific arbitration provision in the contract or its
application to a particular dispute, "questions concerning the validity of the entire contract are to
be resolved by the arbitrator in the first instance, not by a federal or state court."  *Preston v.
Ferrer*, 552 U.S. 346, 349 (2008).  But, determining the validity of an otherwise existing contract
is different from determining whether a contract was ever actually executed.  *See Buckeye Check
Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006) ("The issue of the contract's validity is
different from the issue whether any agreement between the alleged obligor and obligee was ever
concluded.").

In *Buckeye Check Cashing, Inc.*, the Supreme Court of the United States "specifically
declined to address the question of whether a court or an arbitrator should decide a challenge
based on signatory power."  *Fox Int'l Relations v. Fiserv Secs., Inc.*, 418 F. Supp. 2d 718, 723
(2006) (citing *Buckeye Check Cashing, Inc.*, 546 U.S. at 444 n.1).  Nor has the Supreme Court
directly addressed this question since.  This has led lower federal courts to assume that there are

now three types of challenges a party can make to an arbitration provision: (1) a challenge to the specific arbitration provision or its application, which a court must decide; (2) a challenge to the validity of an otherwise existing contract, which may be decided by an arbitrator; and (3) a challenge to the party's signatory power (i.e., the signor's ability to bind the party in interest), which must be decided by a court.  *See, e.g., Fox Int'l Relations*, 418 F. Supp. 2d at 723–24.

Although the Supreme Court has never addressed this issue head-on, it has seemingly agreed with this general analysis.  For example, in *Granite Rock Co. v. Int'l Bhd. of Teamsters*, --- U.S. ---, 130 S. Ct. 2847, (2010), in discussing a challenge to an arbitration provision, the Court stated in passing the following: "It is similarly well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Id.* at 2855–56.  In the citation accompanying this statement, the Court cited the *Buckeye Check Cashing, Inc.* footnote as "distinguishing [the] treatment of the generally nonarbitral question whether an arbitration agreement was 'ever concluded' from the question whether a contract containing an arbitration clause was illegal when formed, which question we held to be arbitrable in certain circumstances." *Id.* (citing *Buckeye Check Cashing, Inc.*, 546 U.S. at 444 n.1).  Thus, "when the very existence of . . . an [arbitration] agreement is disputed, a district court is correct to refuse to compel arbitration until it resolves the threshold question of whether the arbitration agreement exists." *Sandvick AB*, 220 F.3d at 112.

## III.   DISCUSSION

The initial question before the Court is whether the arbitrator overstepped his authority by ruling that Unity was subject to the CBA.  Respondents argue that Unity's claims are, in actuality, claims about fraud in the inducement—a questions of contract "validity" that is properly decided by the arbitrator.  *See, e.g., Preston*, 552 U.S. at 349.  Unity counters that this dispute is solely about contract formation, a question that is to be decided by the courts.  *See,*

4

*e.g., Sandvick AB*, 220 F.3d at 112.  It appears to the Court that both of these questions were argued to, and addressed by, the arbitrator.[1]  In its Award and Preliminary Order, the arbitrator first addressed whether D'Alessio had authority to sign the CBA and ruled that "the defense of 'lack of authority' finds no support in this Arbitrator's determination that an effective [CBA] exists." (McEwan Cert., Ex. A, 9).  Because deciding the issue of D'Alessio's authority to bind Unity was necessary for the arbitrator's determination that an effective CBA exists—and thus the arbitrator's determination on the merits—the Court finds that arbitrator exceeded his power in violation of 9 U.S.C. § 10(a)(4).

As explained above, there are three attacks that can be made on an arbitration provision: (1) an attack of the specific provision or its application; (2) an attack on whether an otherwise existing contract is valid or invalid; and (3) questioning whether a contract exists in the first place.  *See, e.g., Fox Int'l Relations*, 418 F. Supp. 2d at 723–24.  A necessary finding that preceded the arbitrator's determination on the merits in this case fell into this third category.  It is axiomatic, however, that an arbitrator—as the Petitioner puts it—cannot rule himself into existence.  Rather, whether a contract exists *ab initio* is for judicial determination.  *See Sandvick AB*, 220 F.3d at 112.  This is so for good reason: "[A]rbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration."  *AT&T Techs.*, 475 U.S. at 648–49 (citing *Gateway Coal Co.* v. *Mine Workers*, 414 U.S. 368, 374 (1974)).  "Representation issues [i.e., who may represent a party in labor negotiations] may not be decided by contract, and thus may not be decided by an arbitrator." *N.L.R.B. v. Paper Mfr.'s Co.*, 786 F.2d 163, 167 (1986).  Therefore, "where a party asserts that it is not a signatory to a collective bargaining agreement," the Court should afford "no deference . .

---

[1] Unity argued to the arbitrator that it did not receive the long-form version of the CBA and it therefore did not realize that it was binding itself to the larger document.  This is the basis of Respondents' fraud-in-the-inducement theory of Petitioner's claim, which was addressed and decided by the arbitrator.  (*See* McEwan Cert., Ex. A, 10).

. to an arbitrator's award." *N.J. Reg'l Council of Carpenters v. Heartland Dev. Co., Inc.*, No. 09-0178, 2010 U.S. Dist. LEXIS 41139, *9 (D.N.J. Apr. 27, 2010) (citations omitted).

Having concluded that the arbitrator exceeded his authority, the next question that the Court must decide is whether the arbitration award may be confirmed regardless of the arbitrator's misstep. Respondent argues that the Court should enforce the arbitration award notwithstanding the arbitrator's error based upon the Court's own determination that Unity was bound by the CBA and its arbitration clause. They argue that "[s]uch a course of action would prevent needless re-hearing of arbitration and filings of petitions and briefs." (Resp'ts Br. 17). However, Respondents have not pointed to any case in which a Court took such action. Rather, they seem to argue that the underlying policy of the Federal Arbitration Act favors such an approach. *But cf. Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 527 (3d Cir. 2009) (holding that the question of whether a dispute falls within a valid agreement is subject to a presumption in favor of arbitration but that the question whether an agreement to arbitrate was consummated between the parties is <u>not</u> subject to a similar presumption).

In order to find that Unity was subject to the CBA, this Court would have to undertake a fact hearing (if not a full jury trial) on the issue. *See, e.g., Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980) ("If there is doubt as to whether such an [arbitration] agreement exists, the matter, upon a proper and timely demand, should be submitted to a jury."); *N.J. Reg'l Council of Carpenters v. Heartland Dev. Co., Inc.*, No. 09-0718, 2010 U.S. Dist. LEXIS 41139, *18 (D.N.J. Apr. 27, 2010) (requiring a fact hearing regarding whether one company could bind another to an arbitration agreement on an alter-ego theory). On the record before the Court, such a factual finding would be premature. Moreover, this issue was not

fully briefed by either party.[2]  Therefore, because the arbitrator overstepped his authority in violation of 9 U.S.C. § 10(a)(4), the arbitration award will be vacated.

## IV.     CONCLUSION

For the reasons stated above, Petitioner's Motion to Vacate Arbitration Award will be granted and the Respondents' Cross-Motion to Confirm Arbitration Award will be denied.  An appropriate order will follow.

_/s/ Anne E. Thompson_____
ANNE E. THOMPSON, U.S.D.J.

Date: December 12, 2011

---

[2] Respondents committed only one page of its brief to this issue and Petitioner did not address this issue at all.